# UNITED STATES DISTRICT COURT
для the
Eastern District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>MICHAEL ANTHONY GRIFFIN, SR.<br><br>_____<br>*Defendant(s)* | )<br>)<br>) Case No. 5:19-MJ-1941-RN<br>)<br>)<br>)<br>) |

FILED
AUG 6 2019
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2/1/2017 through 8/22/2017__ in the county of __Wake__ in the __Eastern__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1343 | Wire Fraud (5 Counts) |
| 18 U.S.C. 1028A(a)(1) | Aggravated Identity Theft (1 Count) |

This criminal complaint is based on these facts:

See attached Affidavit of Anthony J. Ventre.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Anthony J. Ventre, Special Agent
*Printed name and title*

Date: 8/6/2019 3:54 pm

_____
*Judge's signature*

City and state: Raleigh, North Carolina

Robert T. Numbers II, United States Magistrate Judge
*Printed name and title*

**IN THE MATTER OF A CRIMINAL** )
**COMPLAINT AGAINST MICHAEL** )   **AFFIDAVIT IN SUPPORT OF**
**ANTHONY GRIFFIN SR.** )   **CRIMINAL COMPLAINT**

I, Anthony J. Ventre, being duly sworn, depose and say as follows:

## A. IDENTITY AND EXPERIENCE OF AFFIANT

(1)  AFFIANT, Anthony J. Ventre, is a Special Agent with Criminal Investigation (CI) of the Internal Revenue Service (IRS), United States Department of Treasury.

(2)  As a Special Agent, my responsibilities include investigation alleged criminal violations of the Internal Revenue Code (Title 26, United States Code), the Bank Secrecy Act (Title 31 United States Code), the Money Laundering Control Act (Title 18, United States Code) and related offenses. I have received extensive training in tax-related and other financial crimes, including money laundering violations. As a Special Agent, I have conducted or participated in investigations of alleged violations of the above-stated statutes. I have participated in the execution of search and seizure warrants in the capacity of affiant and participant. This affidavit contains only those facts which are sufficient and necessary to promote the purpose of the affidavit, described below.

(3)  This affidavit is based upon information gained from my personal observations and those of other law enforcement officers. I have personally participated in the investigative operations described below. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by other law enforcement officers, and confidential sources who have assisted in the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another Special Agent or law enforcement officer, or a confidential source or source of information (any of whom may have had either direct or hearsay knowledge of that statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are referenced in substance and in part, unless otherwise indicated.

(4)  Since this affidavit is being submitted for the limited purpose described below, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are required to achieve the purpose of the affidavit.

### B. PURPOSE OF THE AFFIDAVIT

(5) This affidavit is made in support of an application for a warrant to arrest MICHAEL ANTHONY GRIFFIN SR. upon a Criminal Complaint. The purpose of this affidavit is to establish probable cause that MICHAEL committed the following offenses (hereinafter "Subject Offenses"):

- Title 18, United States Code, Section 1343 (Wire Fraud)
- Title 18, United States Code, Section 1028A (Aggravated Identity Theft)

### C. STATEMENT OF PROBABLE CAUSE THAT THE SUBJECT OFFENSES HAVE BEEN / ARE BEING COMMITTED

(6) At all times material to this Complaint, MICHAEL ANTHONY GRIFFIN SR. was an individual who owned and operated an unnamed Credit Repair Business in Raleigh, North Carolina, located in the Eastern District of North Carolina.

(7) Beginning at a time unknown, but no later than November 2012, and continuing through the present, GRIFFIN has operated a Credit Repair Organization (CRO) that has fraudulently removed or attempted to remove negative tradelines from the credit profiles of his clients. This was done to boost the credit scores of his clients, in exchange for a fee.

### BACKGROUND

(8) The Credit Repair Organizations Act (CROA) defines a credit repair organization (CRO), in part, as any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) and service, in return for the payment of money or other valuable consideration, for the express or implied purpose of:

   a) Improving any consumer's credit record, credit history or credit rating, or

   b) Providing advice or assistance to any consumer with regard to any activity described in (a).

(9) Equifax is a Consumer Reporting Agency (CRA) which is in the business of assembling and evaluating consumer credit information and other information regarding consumers for the purpose of providing reports about the credit-worthiness of consumers to third parties. This information is commonly referred to as a credit report.

(10) CRAs typically sell credit reports, directly and indirectly, to, among others, entities in the business of making decisions regarding whether, and on what terms, to lend money to consumers or to sell goods and services to consumers on credit (the "end-users"). CRAs may also provide end-users with "credit scores."

(11) Credit scoring is a statistical methodology that quantifies credit risk posed by a prospective or current borrower and is based on information in the credit report. Credit scoring is widely used to evaluate applications for credit, identify prospective borrowers, and manage existing credit accounts. The ultimate credit score of a particular customer is influenced by many factors, including the consumer's payment history, utilization of credit, balances, available credit limit, and length of credit history.

(12) End-users of credit reports and credit scores use them to determine creditworthiness of their customers. Common end-users of credit reports and credit scores are credit card issuers, mortgage lenders, and automobile lenders.

(13) Credit histories are comprised of information provided to CRAs by, among other sources, "furnishers." Furnishers are entities that provide information relating to consumers to one or more CRAs for inclusion by the CRA in a credit report and, ultimately, for the information to be factored into a credit score. Common furnishers are credit card issuers, automobile lenders, department stores, utilities, insurers, and collection agencies.

(14) Many furnishers are also end-users of credit reports. Because of the importance of credit histories and credit scores to lending decisions, the integrity and availability of accurate data and information maintained by CRAs is extremely important to furnishers, end-users, and CRAs.

(15) A line of credit is an agreement between a lender and a consumer whereby the lender agrees to lend a consumer funds up to an agreed upon limit. The consumer may borrow as much of the line as needed and pays interest on the borrowed portion only. Payment amounts are typically based upon the outstanding balance amount.

(16) Lines of credit or credit accounts are the most common item appearing on a credit report. CRAs commonly refer to these as tradelines. Each tradeline listed on a credit reports contains detailed information about the account.

(17) According to Section 611 of the Fair Credit Reporting Act (FCRA): "…if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."

(18) Furthermore, Section 605B of the FCRA states: "Except as otherwise provided in this section, a consumer reporting agency shall block the information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than four (4) business days after the date of receipt by such agency of:

a) Appropriate proof of identity of the consumer;

b) A copy of an identity theft report;

c) The identification of such information by the consumer; and

d) Statement by the consumer that the information is not information relating to any transaction by the consumer."

## FRAUDULENT CREDIT REPAIR SCHEME

(19) Your affiant's investigation has established that Beginning at a time unknown, but no later than November 2012, and continuing through the present, GRIFFIN has operated a fraudulent CRO. GRIFFIN promises clients that he can repair their credit and boost their credit scores in exchange for money.

(20) GRIFFIN has removed, or attempted to remove, negative tradelines from the credit profiles of his clients by submitting fraudulent documentation, either through mail, or fax, to CRAs, including Equifax. This documentation normally includes the following:

a) Photocopies of the client's driver's license and social security card;

b) A police reports claiming that the client is the victim of identity theft,

c) A sworn affidavit of identity and residency, and

d) A dispute letter, purportedly drafted by the client, stating that someone has fraudulently used their credit profile to obtain credit.

(21) For all counts relative to this Complaint, GRIFFIN furnished to Equifax information falsely and fraudulently indicating that his clients had been victims of Identity Theft or Identity Fraud. GRIFFIN conveyed these claims to Equifax knowing that his clients had not been victims of Identity Fraud or Identity Theft. This false and fraudulent information was conveyed by wire to Equifax in the form of fraudulent police reports and other documents. These false and fraudulent police reports and documents provided Equifax with the clients' personal identity information along with detailed lists of tradelines and other accounts which were the subject of the falsely alleged Identity Fraud or Identity Theft.

(22) As mandated by the FCRA , Equifax had four (4) business days to investigate the claims of Identity Fraud and Identity Theft. These investigations often cannot be completed within this allotted four (4) day window of time. This caused negative tradelines to falsely and fraudulently be removed from the credit profiles of GRIFFIN's clients. This helped to falsely and fraudulently increase the credit scores of GRIFFIN's clients, allowing them to obtain credit they otherwise would not have qualified for.

(23) For all counts relative to this Complaint, each of the agencies listed on the police reports furnished to Equifax were contacted. In all cases the police reports were determined to be fraudulent.

(24) For all counts relative to this Complaint, each of the clients related to these police reports was interviewed. Each stated that they had no knowledge of, nor involvement in, the creation or submission of these reports to Equifax.

(25) GRIFFIN's clients were often charged a starting fee of $1,500 to $3,000 for the credit repair service. Additional fees were often charged to complete the credit repair. Fees paid to GRIFFIN were most often made in the form of untraceable cash or money orders that did not list any purchaser information. These payments were often deposited into the bank accounts of shell companies under the control of GRIFFIN.

### Wire Fraud – 18 U.S.C. § 1343 – Counts 1 through 5

(26) Count 1 - On or about May 25, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Wilson Police Department Report P17-345614 claiming that client T.D. was the victim of identity theft. These documents were faxed from Raleigh, North Carolina to Equifax in Atlanta, GA.

(27) Count 2 - On or about July 13, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Wilson Police Department Report P17-345614, claiming that client T.D. was the victim of identity theft. These documents were faxed from Raleigh, North Carolina to Equifax in Atlanta, GA.

(28) Count 3 - On or about August 22, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Wilson Police Department Report P17-345614, claiming that client T.D. was the victim of identity theft. These documents were faxed from Raleigh, North Carolina to Equifax in Atlanta, GA.

(29) Count 4 - On or about February 1, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Raleigh Police Department Report P17-005942, claiming that client K.B. was the victim of identity theft. These documents were faxed from Raleigh, North Carolina to Equifax in Atlanta, GA.

(30) Count 5 - On or about June 15, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Raleigh Police Department Report P17-005942, claiming client K.L. was the victim of identity theft. These documents were faxed from Raleigh, North Carolina to Equifax in Atlanta, GA.

## Aggravated Identity Theft - 18 U.S.C. § 1028A – Count 6

(31) On or about May 25, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax Wilson Police Department Report P17-345614 and other documents that contained the personal identity information of T.D. T.D. had no knowledge of, nor involvement in, the creation or submission of this police report.

(32) On or about July 13, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Wilson Police Department Report P17-345614, and other documents that contained the personal identity information of T.D. T.D. had no knowledge of, nor involvement in, the creation or submission of this police report.

(33) On or about August 22, 2017, GRIFFIN sent by means of wire communication in interstate commerce documents to Equifax that included Wilson Police Department Report P17-345614, and other documents that contained the personal identity information of T.D. T.D. had no knowledge of, nor involvement in, the creation or submission of this police report.

### D. CONCLUSION

(34) Based upon the information contained in this affidavit, there is probable cause to believe that the Subject Offenses have been committed, and that MICHAEL ANTHONY GRIFFIN SR committed them. Therefore, your Affiant respectfully requests that a warrant for arrest be issued.

_____
ANTHONY J. VENTRE, SPECIAL AGENT
IRS CRIMINAL INVESTIGATION

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: August 6, 2019

_____
Robert T. Numbers, II
United States Magistrate Judge